United States District Court
Southern District of Texas
**ENTERED**
January 11, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIELLE FONTENOT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-21-1178 |
| | § | |
| COMMUNITY COFFEE COMPANY, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Defendant Community Coffee Company, LLC's pending "Motion for Summary Judgment Based Upon the Valid and Enforceable Separation Agreement Between the Parties" (sealed Document No. 16) has been referred to the undersigned Magistrate Judge for a Memorandum and Recommendation. Having considered that motion, Plaintiff's Response (Document No. 17), Defendant's Reply (sealed Document No. 18), the terms of the Separation Agreement relied upon by Defendant, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED.

**I.     Background**

Plaintiff Danielle Fontenot ("Fontenot"), a former employee of Defendant Community Coffee Company, LLC ("Community Coffee"), filed this employment discrimination case against Community Coffee alleging claims of race discrimination and retaliation under Title VII and 42 U.S.C. § 1981. Fontenot alleges that she was selected for termination during a reduction in force ("RIF") after she had raised complaints of race discrimination with Community Coffee's Human Resources Department. According to Fontenot, several Caucasian employees with less tenure than

she were retained during the RIF.

Community Coffee does not address the substance of Fontenot's claims in its Motion for Summary Judgment. Instead, relying on the terms of a Separation Agreement Fontenot signed, Community Coffee argues that Fontenot released and waived any claims related to her employment with Community Coffee, and that her claims should be dismissed with prejudice on that basis. Fontenot, in response, admits that she signed the Separation Agreement, and admits that she received and retained pursuant thereto a payment of $15,033.44. Despite those admissions, Fontenot argues that she did not knowingly and voluntarily execute the Separation Agreement, and that her execution of the agreement was obtained by fraud and duress. Fontenot further argues that it is of no consequence that she did not return, and has not offered to return, the $15,033.44 she received pursuant to the Separation Agreement.

Because the undersigned concludes that the terms of the Separation Agreement foreclose any viable claim of fraud/fraudulent inducement and/or duress, and because the Separation Agreement covers the type of claims alleged by Fontenot in this case, there is no genuine issue of material fact relative to the enforceability of the Separation Agreement or the release of Fontenot's claims. Community Coffee is therefore, for the reasons that follow, entitled to summary judgment.

**II.    Summary Judgment Standard**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once

the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

**III.   Discussion**

The Separation Agreement at issue in the nature of a "release." *See* Separation Agreement at ¶ 3 ("By entering into this Agreement and in exchange for the above payments Employee hereby waives, releases, discharges, and agrees not to sue the Company ...").

"A release is a contract subject to the rules of contract construction. Accordingly, in order to establish the affirmative defense of release, the party asserting the defense of release is required to prove the elements of a contract." *In re J.P.*, 296 S.W.3d 830, 835 (Tex. App. – Ft. Worth 2009) (internal citations omitted); *D.R. Horton-Texas, Ltd. v. Savannah Properties Assocs., L.P.*, 416 S.W.3d 217, 226 (Tex. App. – Ft. Worth 2013) ("A release is an agreement or contract in which one party agrees that a legal right or obligation owed by the other party is surrendered. . . . A release extinguishes a claim or cause of action and is an absolute bar to any right of action on the released matter."). Once the existence of a release is properly pleaded or established, the burden shifts to the opposing party – Fontenot in this case – to allege facts that would support a legal basis for "setting aside the release." *Deer Creek Ltd. v. N. Am. Mortg. Co.*, 792 S.W.2d 198, 201 (Tex. App.– Dallas 1990). The legal bases for challenging a release are very limited, but include: fraud, duress, mistake, and unconscionability. *Ollie v. Plano Indep. Sch. Dist.*, 323 F. App'x 295, 297 (5th Cir. 2009); *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 131 (Tex. App.– El Paso 2018). "To establish duress as an affirmative defense to a contract, [a party] must show that there is (1) 'a threat to do some act which the party threatening has no legal right to do,' (2) 'some illegal exaction or some fraud or deception,' and (3) 'the restraint must be imminent and such as to destroy free agency without presenting means of protection.'" *See Sprague v. Kroger Texas, LP*, No. 4:17-CV-00874-O, 2019 WL 885236, at *8 (N.D. Tex. Feb. 5, 2019), *report and recommendation*

4

*adopted*, No. 4:17-CV-00874-O, 2019 WL 859686 (N.D. Tex. Feb. 22, 2019). As for fraudulent inducement as a basis for challenging the validity of a release, it is for the party asserting fraudulent inducement to "establish 'the elements of fraud ... as they relate to an agreement between the parties.'" *Smith v. Wells Fargo Bank N.A.*, No. 3:19-CV-02406-X-BT, 2021 WL 3935276, at *5 (N.D. Tex. Aug. 18, 2021), *report and recommendation adopted sub nom. Smith v. Wilson*, No. 3:19-CV-02406-X-BT, 2021 WL 3930723 (N.D. Tex. Sept. 2, 2021) (quoting *Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840, 843 (Tex. App.—Houston [1st Dist.] 2004, no pet.). That means the six elements of Texas common law fraud must be established: (1) that a material representation was made; (2) that the representation was false; (3) that the representation was "made with knowledge of its falsity or recklessness as to its truth;" (4) that the representation was "made with the intention that it should be acted upon by another party;" (5) that the representation was relied upon by the party to whom the representation was made; and (6) that the party relying on the representation was injured thereby. *Id.* (quoting *Flaherty & Crumrine Preferred Income Fund*, Inc. v. TXU Corp., 565 F.3d 200, 212-13 (5th Cir. 2009). The reliance element is only met where there was actual reliance, and the reliance was justifiable. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018).

  Here, Fontenot maintains that she only signed the Separation Agreement because she was told by her managers on April 9, 2020, the date she was informed of her RIF termination, that she had to sign the separation agreement in order to receive her final paycheck. Fontenot argues that the representations by her managers constitute duress and/or fraudulent inducement that should serve to invalidate the Separation Agreement. Fontentot states in this regard, in a Declaration she filed in response to Community Coffee's Motion for Summary Judgment, that:

> 3. . . . On April 9, 2020, I received an unexpected call from my first-line manager, Tommy Martin ("Martin"), and [Beau] Brown [second-line manager] on my day off from work terminating my employment with Community Coffee. During the conversation, Brown and Martin informed me my employment was terminated immediately and individuals would be coming to my home immediately to collect my company vehicle and other company-issued electronic devices. I was completely blindsided by this call and abrupt termination.
>
> 4. Brown and Martin further told me that I would be sent separation documents that were required to be executed if I wanted to receive my final paycheck. I attempted to ask for clarification and why I needed to sign these documents before I received my final paycheck but was advised by Brown and Martin that the decision had been made and the execution of the separation documents were [sic] non-negotiable. I felt bullied by the entire separation conversation with Brown and Martin and by how Community Coffee pressured me to make myself available so it could retrieve the company vehicle and company-issued electronics. I felt like I had no other options in this situation.
>
> 5. My termination occurred during the peak of the COVID-19 pandemic, so I could not take the chance of not receiving my final paycheck. I had no time to consider all the information that was given to me since Martin and Brown stated I needed to execute and return the separation documents to receive my final paycheck. I had no time to consult with an attorney to verify my rights. Even though I am a college graduate, I do not have a legal background and did not have experience in reviewing and negotiating legal agreements. I struggled to understand the legal terms of the document and I did not understand the broad scope of the agreement. Ultimately feeling that I had no options, I executed and returned the separation documents.

Declaration of Danielle Fontenot (Document No. 17-1) at 1-2. These statements in Fontenot's Declaration do not raise a genuine issue of material fact on the validity and enforceability of the release contained in the Separation Agreement.

The Separation Agreement contained a clear provision regarding the release of any and all claims related to Fontenot's employment with Community Coffee:

> 2. In exchange for the obligations and commitments Employee makes in this Agreement, the Company agrees to pay Employee separation pay in the amount of $15,033.44 with all payments being subject to withholdings as

6

explained herein. The lump sum separation pay will be made on the Company's first scheduled bi-weekly pay date following Employee's execution of the Agreement. Employee acknowledges that the above-described separation pay is not required by Company policy but instead is an extra payment to which Employee otherwise would not be entitled, absent execution of this Agreement.

3.   **By entering into this Agreement and in exchange for the above payments Employee hereby waives, releases, discharges, and agrees not to sue** the Company or any of its past, present or future officers, employees, directors, shareholders, members, owners, agents and plan administrators **with regard to any and all claims, past or present, relating to Employee's employment or termination of employment with the Company, including, but not limited to**, any and all claims and demands arising under the Laws of the State of Texas, including but not limited to, any and all statutory or equity claims; Chapter 21 of the Texas Labor Code (also known as the "Texas Commission on Human Rights Act"), including Tex. Lab. Code §§ 21.051 and 21.055, and the Texas Genetic Testing Law (Tex. Lab. Code § 21.401 to 21.405); Texas Civil Practice and Remedies Code, including any claim for attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code; Texas Communicable Diseases Law, Tex. Health & Safety Code § 81.101, et seq., and any other claims under the Texas Health and Safety Code; Texas Disability Discrimination Law, Tex. Hum, Res. Code § 121.001, et seq; Texas Occupations Code; Texas Payday Law, Chapter 61 of the Texas Labor Code, and any other claims under the Texas Labor Code; Texas Workers' Compensation Act (including retaliation and other claims under Chapter 451 of the Texas Labor Code, formerly Article 8307c of the Texas Workers' Compensation Act); as well as **claims based upon allegations of discrimination, or harassment on account of race, sex, national origin, age, religion, genetic testing, disability, handicap, genetic information or Veterans' status,; wrongful discharge; retaliation; breach of contract; breach of public policy; interference with rights; defamation; tort; or any other statutory, constitutional, or common/civil law cause of action brought under federal, state or local law, statute, or constitution, including, but limited to claims arising under Title VII of the Civil Rights Act ("Title VII"), the Civil Rights Act of 1866 and 1871**, the federal Age Discrimination in Employment Act ("ADEA"), the Family and Medical Leave Act ("FMLA"); claims arising under the Employee Retirement Income Security Act ("ERISA"); or any other statutory, constitutional, or common/civil law cause of action arising under federal or state law, including but not limited to any and all claims for compensation, wages, back pay, benefits, vacation pay, sick pay, bonuses, personal injuries, emotional distress, pain and suffering, penalties, liquidated damages, punitive damages, interest and attorneys' fees; provided, however,

7

> nothing in this release shall waive or diminish Employee's rights (a) to receive benefits or distributions to which she may be entitled under the terms of the Community Coffee 401(k) Plan and (b) to receive health care coverage under the federal continuation of health coverage known as "COBRA". This release includes the waiver of any right of recovery, which may arise from any action instituted by another party or individual on Employee's behalf relating to matters covered by this Agreement.
>
> 4. **Employee agrees and promises never to file a lawsuit, complaint or other claim asserting any claim or demand that is within the scope of the release and waiver.** Employee represents that she has not filed any complaints, claims, actions, or charges against the Company with any state, federal, or local agency or court; that she knows of no facts which may lead to any complaints, claims, action or charged against the Company in or through any state, federal, or local agency or court; and that she has not made the Company aware of any facts which may lead to any complaints, claims, actions, or charges against the Company in and through any state, federal, or local agency or court. Nothing in this Agreement is intended to limit or impair in any way Employee's right to file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) or comparable federal, state and local agencies, or to limit or impair Employee's right to participate in any such charge filed with or investigation conducted by such agencies.

Separation Agreement at 2-3 (sealed Document No. 16-2 at 3-4) (emphasis added). In addition, the Separation Agreement itself also advised Fontenot that she could consult with an attorney before signing/executing it and that she had forty-five (45) days to make up her mind about whether to sign/execute it:

> 7. Employee understands that she is free to consult with legal counsel prior to signing this Agreement. Employee further acknowledges that she has been given a period of up to forty-five (45) days from her receipt of this Agreement to consider the Agreement, and that by signing the Agreement, she does so knowingly, voluntarily, and after having has opportunity to seek legal counsel.

Separation Agreement at 4 (sealed Document No. 16-2 at 5).

8

The terms of the Separation Agreement, particularly paragraph 7, override any claims by Fontenot that she signed the Separation Agreement under duress and/or that she was fraudulently induced into signing/executing the Separation Agreement. To the extent Fonteont states in her Declaration that her managers told her she had to sign the Separation Agreement and had to do so in order to receive her final paycheck, Fontenot could not have *justifiably* relied on her managers statements in light of paragraph 7 of the Separation Agreement. *See Clements v. HLF Funding*, No. 05-19-01295-CV, 2021 WL 3196962, at *8 (Tex. App. July 28, 2021) ("Reliance may not be justified where the representations are directly contradicted by the terms of the contract between the parties or where there are "red flags" indicating such reliance is unwarranted."); *Harrison v. Meritz Fire & Marine Ins. Co.*, No. 14-18-00336-CV, 2020 WL 2070660, at *3 (Tex. App. Apr. 30, 2020), review denied (Mar. 5, 2021) ("'[A] party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms.'"); *Kennedy v. Harber*, No. 05-17-01217-CV, 2018 WL 3738091, at *4 (Tex. App. Aug. 7, 2018) ("Reliance on an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law.") (citing *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018). Moreover, Fontenot's economic position and financial stress does not establish the type of legal or economic duress that could invalidate the Separation Agreement. *See e.g. Walkup v. Tyson Foods, Inc.*, No. 7:13-CV-0150-O, 2014 WL 4798443, at *6 (N.D. Tex. Sept. 26, 2014) (employee failed to establish economic duress to invalidate a settlement agreement/release).

Here, because the terms of the Separation Agreement both covered the claims at issue in this case, and provided Fontenot with considerable time to consider whether to sign/execute the

Separation Agreement, the summary judgment evidence does not raise a genuine issue of material fact on Fontenot's duress and fraudulent inducement defenses to the validity and enforceability of the Separation Agreement. Accordingly, Community Coffee's Motion for Summary Judgment should be granted.

## IV. Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiff Danielle Fontenot legally and validly released the claims made the basis of this suit when she executed the Separation Agreement, and that there is no genuine issue of material fact on her claim that she signed the Separation Agreement under duress, or was fraudulently induced to sign/execute the Separation Agreement, the Magistrate Judge

RECOMMENDS that Defendant's "Motion for Summary Judgment Based on the Valid and Enforceable Separation Agreement Between the Parties" (Document No. 16) be GRANTED and that Plaintiff's claims all be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), to the recommendation made herein relative to Defendant's Motion to Dismiss. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th

Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 11th day of January, 2022.

Frances H. Stacy
United States Magistrate Judge